**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LARHONDA MITCHELL, individually, and on behalf of all others similarly-situated,<br><br>          Plaintiff,<br><br>       -against-<br><br>COVANCE, INC., and CHILTERN INTERNATIONAL, INC.,<br><br>          Defendants. | Civil Action No.: 2:19-cv-02877 |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................ 1

FACTUAL BACKGROUND ............................................................................... 3

    A.    The Complaint ......................................................................... 3

    B.    Plaintiff's Declaration ............................................................. 5

    C.    Declaration of Tamera Nickerson ............................................ 6

LEGAL STANDARD ........................................................................................ 7

ARGUMENT ................................................................................................... 9

I.    PLAINTIFF CANNOT MEET HER "LENIENT" BURDEN OF PROOF FOR CONDITIONAL CERTIFICATION ............................................................. 9

    A.    Plaintiff and Other Start-Up Specialists Are Not Collectively Victims of a Uniform Misclassification Policy ................................... 10

    B.    An Administrative Directive by a Manager Enforcing an Exemption Classification Is Not In and of Itself a Common Unlawful "Policy" ................ 11

    C.    Even Assuming Arguendo Plaintiff Modified the Collective Definition to Include Only Exempt Start-Up Specialists, Plaintiff Cannot Show She and Other Exempt Start-Up Specialists Are Similarly Situated ............................... 12

        i.    Plaintiff's Conclusory and Threadbare Evidence Is Patently Insufficient to Establish She and Other Start-Up Specialists Are "Similarly Situated" ................................ 12

        ii.    The Cases Cited In Plaintiff's Moving Papers Are Inapposite ............... 16

    D.    The Court Should Reject Plaintiff's Proposed Notice ......................... 17

CONCLUSION ............................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bramble v. Wal-Mart Stores, Inc.*,
  2011 WL 1389510 (E.D. Pa. Apr. 12, 2011) .................................................. *passim*

*Craig v. Rite Aid Corp.*,
  No. 08-CV-2317, 2009 WL 4723286 (M.D. Pa. Dec. 9, 2009)...............................................10

*Dunkel v. Warrior Energy Servs., Inc.*,
  304 F.R.D. 193 (W.D. Pa. 2014) .................................................................15

*Freeman v. Sam's E. Inc.*,
  No. CV 2:17-1786 (WJM), 2018 WL 5839857 (D.N.J. Nov. 8, 2018) ...................................15

*Harrison v. DelGuerico's Wrecking & Salvage, Inc.*,
  305 F.R.D. 85 (E.D. Pa. 2015).....................................................................8

*Holley v. Erickson Living*,
  No. Civ. 11-2444, 2012 WL 1835738 (E.D. Pa. May 21, 2012) ............................................8

*Jordan v. Meridian Bank*,
  No. CV 17-5251, 2019 WL 1255067 (E.D. Pa. Mar. 19, 2019)..........................................7

*Mike v. Safeco Ins. Co. of America*,
  274 F. Supp. 2d 216 (D. Conn. 2003)...................................................................11

*Moore v. PNC Bank, N.A.*,
  No. 2:12-CV-1135, 2013 WL 2338251 (W.D. Pa. May 29, 2013) .............................8, 12, 13

*Prise v. Alderwoods Grp., Inc.*,
  817 F. Supp. 2d 651 (W.D. Pa. 2011).....................................................................8

*Purnamasidi v. Ichiban Japanese Rest.*,
  No. 10-CV-1549 DMC JAD, 2010 WL 3825707 (D.N.J. Sept. 24, 2010)............................16

*Schneck v. Lawrence D. Brudy & Associates, Inc.*,
  No. CA 15-1058, 2016 WL 912299 (W.D. Pa. Mar. 10, 2016)...............................................9

*Steinberg v. TD Bank, N.A.*,
  No. 10-cv-5600, 2012 WL 2500331 (D.N.J. June 27, 2012)............................................17, 18

*Symczyk v. Genesis HealthCare Corp.*,
  656 F.3d 189, 192 (3d Cir. 2011)........................................................................8

*Viscomi v. Diner*,
    No. CV 13-4720, 2016 WL 1255713 (E.D. Pa. Mar. 31, 2016) ...............................................16

*Wright v. Lehigh Valley Hosp.*,
    No. 10-431, 2010 WL 3363992 (E.D. Pa. Aug. 24, 2010) .........................................................8

*Zavala v. Wal-Mart Stores Inc.*,
    691 F.3d 527 (3d Cir. 2012) .............................................................................................7, 10

**Statutes**

29 U.S.C.A. § 216 ........................................................................................................ *passim*

**Other Authorities**

29 C.F.R. § 541.202 ............................................................................................................14

Defendants Covance Inc. and Chiltern International Inc. (hereinafter "Defendants"), by and through their attorneys, Dilworth Paxson LLP and Kelley Drye & Warren LLP, respectfully submit this memorandum of law in opposition to Plaintiff Larhonda Mitchell's Motion for Conditional Certification (the "Motion").

## PRELIMINARY STATEMENT

Plaintiff's bare-bones effort to conditionally certify a collective of "all Start-Up Specialists" falls far short of even the minimal proffer that is required. Indeed, her own Motion deconstructs her argument for conditional certification.

Plaintiff's own Motion admits that some Start-Up Specialists are exempt from the overtime requirements of federal and state law, while others are classified as non-exempt. Thus, the most Plaintiff can say (and does say in her Complaint, as set forth below) is that some, but not all, Start-Up Specialists are misclassified. But if that is true, then by definition there can be no *uniform* "policy" of misclassification applicable to "all Start-up Specialists." That is, consistent with what Plaintiff herself pleads, overtime classifications of Start-Up Specialists are not made for the group as a whole under some uniform "policy," but instead are made on an individual-by-individual basis. Thus, Plaintiff does not allege—because she cannot—that a single class can be united under a single policy applicable to *all* Start-Up Specialists (i.e., to everyone in the putative collective). As a matter of law, Plaintiff cannot meet the "similarly situated" requirement when Plaintiff alleges that putative members of the collective are not classified (or misclassified) in a uniform manner. *See Bramble v. Wal-Mart Stores, Inc.*, 2011 WL 1389510, at *4 (E.D. Pa. Apr. 12, 2011).

Apparently aware of this fundamental deficiency in defining a class, Plaintiff attempts to concoct the kind of "policy" required to unite a collective out of statements allegedly made by two individual managers to a small handful of Start-Up Specialists—about 10—that overtime-exempt Start-Up Specialists should not record more than eight hours of work per day. But this alleged administrative instruction from two managers to a small group of Start-Up Specialists is not evidence of a common unlawful "policy" for two reasons. First, if these alleged statements are anything at all, they are simply managers telling employees who are classified as exempt to record time consistent with that classification decision. And second, even to the extent that the managers' statements allegedly *reflect* some policy (as opposed to *constituting* one), mere classification of a group of employees as exempt is insufficient to constitute a common unlawful policy, as noted above.

Finally, even if these bare-bones, deficient theories could suffice—and clearly they cannot—the Motion falls far short of proffering even the minimal evidence required to support conditional certification. For even if Plaintiff modified her definition of the putative collective to salvage some portion of it—for example, a collective of exempt Start-Up Specialists—this Court has already held that a plaintiff cannot meet her modest burden to proceed collectively where only "sparse evidence [is] submitted." *See Bramble*, 2011 WL 1389510, at *4. And Plaintiff's Motion is about as sparse as it gets: a single declaration from one other Start-Up Specialist and a handful of generalized allegations that perhaps nine other Start-Up Specialists (10, including Plaintiff and the declarant) performed some non-exempt work. This falls far short of what the Motion asks this Court to do: conditionally certify a nationwide collective of potentially hundreds of Start-Up Specialists.

2

For these reasons, Plaintiff's Motion for Conditional Certification should be denied with prejudice.

**FACTUAL BACKGROUND**

**A.      The Complaint**

On July 1, 2019, Plaintiff filed her Complaint alleging three claims including, *inter alia*, the failure to pay overtime under the Fair Labor Standards Act ("FLSA").  (*See* Dkt. No. 1, Compl. ¶¶ 36-63). Plaintiff seeks to bring her FLSA overtime claim on behalf of herself, individually, and on behalf of all other similarly-situated persons as a collective action pursuant to § 216(b) of the FLSA.  (*See id.* ¶¶ 48-58).

Plaintiff's allegations relevant to her FLSA collective action claim arise from her employment with Defendants as a Start-Up Specialist from November 22, 2016 to June 21, 2019. (*Id.* ¶¶ 14, 28). Pursuant to the relevant job description[1] attached to Plaintiff's Complaint, a Start-Up Specialist III:

- Acts as the **lead contact** with investigative sites during assigned startup activities;

- **Monitors all aspects** of startup activities to ensure issues are identified and managed; and

- Collects, **reviews, and approves processes** and tracks regulatory and investigator documents required for study site activation.

(Dkt. No. 1, Compl. Ex. A) (emphases added).

Plaintiff tacitly concedes that if these were her job duties she would be exempt, but claims that irrespective of the job duties set forth in the written job description, her primary job duties included assisting project managers with submitting various packages to ethics and

---

[1]  Defendants deny the attached job description is authentic or accurate. The job description appears to be missing job duties, contains repetitive text, and does not contain a description of the necessary experience that is typical of Covance job descriptions.

regulatory authorities. (*Id.* ¶ 16). Plaintiff alleges that there are other Start-Up Specialists employed by Defendants whose primary job duties are "virtually identical" to Plaintiff's primary job duties, (*Id.* ¶ 19) and thus also - not consistent with their written job descriptions.

Plaintiff alleges that during her time as a Start-Up Specialist, she worked more than forty hours per week, was paid on a salary basis, and did not receive overtime for hours purportedly worked over forty per week. (*Id.* ¶ 20). Plaintiff further claims that her individual manager, Michele Kaufman[2], instructed Plaintiff and "other similarly situated employees" that they were to report no more than eight hours worked per day irrespective of the number of hours actually worked. (*Id.* ¶ 21). Notably, Plaintiff claims she worked at just one office location in King of Prussia, Pennsylvania during her entire employment. (*Id.* ¶ 11). Plaintiff fails to identify in her Complaint who these "other similarly situated employees" are who heard Kaufman's alleged directive, does not specifically identify any of these alleged Start-Up Specialists in her Declaration, and makes no attempt whatsoever to argue that whatever her job was at the King of Prussia location was similar to the work performed by other Start-Up Specialists at any other work location.

Plaintiff also readily acknowledges that, unlike herself, other putative class members *were* classified as overtime-eligible hourly employees. (*Id.* ¶ 25). In doing so, Plaintiff herself admits that Start-Up Specialists were not classified in a consistent manner; certainly, she does not allege that any classification (or misclassification) was made pursuant to some uniform policy.

Against this background, Plaintiff seeks to conditionally certify a collective consisting of:

> All Startup Specialists who have been employed by Defendant at
> any time since three (3) years prior to the filing of this Complaint

---

[2] Plaintiff incorrectly spells Ms. Kaufman's name in the Complaint as "Michelle Kauffman."

until the date of final judgment in this matter (the proposed "FLSA Collective"). (*Id.* ¶ 30).

She further alleges that:

She "and the FLSA Collective are all victims of Defendant's unlawful practice(s) that has resulted in willful violation of their rights under the FLSA and that have caused significant damages to Plaintiff and the FLSA Collective." (*Id.* ¶ 34).

But, as noted, Plaintiff does not even purport to describe the alleged unlawful policy that supposedly injured the proposed collective. Instead, Plaintiff simply alleges without factual elaboration that her primary job duties and the primary job duties of all members of the FLSA collective (defined as all non-exempt and exempt Start-Up Specialists) were such that they do not qualify as exempt employees under the FLSA. In essence, *her principal class-related contention is simply that individual Start-Up Specialists were* *sometimes* *misclassified*. (*Id.* ¶ 53). Plaintiff further alleges that Defendants violated the FLSA insofar as Defendants failed to pay Plaintiff and other members of the FLSA collective overtime wages as required by the FLSA for hours worked in excess of forty per week. (*Id.* ¶ 54).

### B.    Plaintiff's Declaration

In purported support of the Motion, Plaintiff declares that "to [her] knowledge," Defendants employ "many" other Start-Up Specialists: (1) who have the same duties as Plaintiff; (2) who regularly work more than forty hours per week without being paid overtime wages; and (3) who were specifically told not to report all hours worked even if they worked more than forty (40) hours in a week. (Pl.'s Decl. ¶ 7). Plaintiff alleges her conclusions "are based upon numerous direct communications [she] had with other Startup Specialists during [her] employment with Defendant[,]" but she does not identify what those communications were (*Id.*). Importantly, Plaintiff cannot say who these other Start-Up Specialists were (though presumably, these would not be the same ones she admits are properly classified), where they worked, which

5

Defendant they worked for, who their supervisors were, or what specific duties they performed (exempt or non-exempt) at work.

Further underscoring the purely anecdotal nature of the "evidence" (if it is even that) in support of the Motion, Plaintiff further declares that nine other Start-Up Specialists told Plaintiff that: "1) they worked greater than forty (40) hours per week; and 2) were not paid overtime." (*Id.* ¶¶ 8, 9). But Plaintiff fails to say how these nine Start-Up Specialists were classified or even whether these nine Start-Up Specialists had the same or similar job duties as her.

### C.     Declaration of Tamera Nickerson

Plaintiff further attempts to bolster the Motion with the declaration of Tamera Nickerson ("Nickerson"), who worked for an unspecified Defendant beginning in "early 2017." (Nickerson Decl. ¶ 5). Because Nickerson defines "Defendant" to mean Defendant Covance, Defendant Chiltern, or any of their predecessors or successors (including her former employer, Theorem), the Motion (and the Complaint) fail to identify whom Nickerson even worked for.

Nickerson declares that she was paid on a salaried basis while working as a Start-Up Specialist, and further claims that her manager instructed her not to report hours worked over forty per week, regardless of the hours actually worked. (*Id.* ¶¶ 8-9). Nickerson also declares, without specific support, that "Defendant" employs many other Start-Up Specialists who have the same primary job duties as her. (*Id.* ¶ 10). Nickerson states that her primary job duties included collecting regulatory documents for clinical sites, reviewing regulatory documents, and forwarding regulatory documents to the appropriate party after her review of same is complete. (*Id.* ¶ 5).

Nickerson also declares that these Start-Up Specialists regularly work more than forty hours per week and were not paid overtime and that this "conclusion" is based upon "numerous direct communications [she] had with other Start-Up Specialists during [her] employment with

Defendant." (*Id.* ¶ 10). Nickerson fails to identify any Start-Up Specialist by name. She also fails to identify how any of these Start-Up Specialists were classified.

* * *

Taking the Complaint and Declarations together—and even crediting them fully—we are left with the following factual background in supposed support of conditional certification:

- Some, but not all, Start-Up Specialists were classified as exempt.

- Some, but not all, Start-Up Specialists were paid overtime.

- Some, but not all, Start-up Specialists were misclassified.

- One manager told a tiny subset of the putative collective that they should not record more than eight hours per day.

- There is no corporate-wide policy concerning the classification of Start-up Specialists as either exempt or non-exempt; thus, the most Plaintiff can say is that *some* performed non-exempt duties on an individual-by-individual basis notwithstanding their written job descriptions, which described exempt duties and responsibilities.

- Perhaps one other Start-Up Specialist worked like Plaintiff did.

- Determining which Start-Up Specialists actually performed exempt duties (consistent with their job description and classification) and thus were properly classified, and which were misclassified based on their job duties, would require individualized inquiries to determine who was even in the proposed collective in the first place.

## LEGAL STANDARD

Plaintiff must demonstrate that she and the other members of the putative FLSA collective are "similarly situated" to establish that collective-action treatment of her claims is appropriate. *See* 29 U.S.C. § 216(b); *Jordan v. Meridian Bank*, No. CV 17-5251, 2019 WL 1255067, at *3 (E.D. Pa. Mar. 19, 2019) (citing *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 535–36 (3d Cir. 2012)). The Third Circuit has adopted a two-step approach for this analysis. *Id.* During the initial phase, the court makes a preliminary determination whether the employees

7

enumerated in the complaint can be provisionally categorized as "similarly situated" to the named plaintiff. *Harrison v. DelGuerico's Wrecking & Salvage, Inc.*, 305 F.R.D. 85, 88 (E.D. Pa. 2015) (quoting *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011)).

During this initial phase, it is the Plaintiff's burden to "show a factual nexus between the manner in which the employer's alleged *policy* affected her and the manner in which it affected other employees." *Moore v. PNC Bank, N.A.*, No. 2:12-CV-1135, 2013 WL 2338251 (W.D. Pa. May 29, 2013) (emphasis added). This requires that a plaintiff set forth "some evidence beyond mere speculation that the defendant's policy affected other employees." *Wright v. Lehigh Valley Hosp.*, No. 10-431, 2010 WL 3363992, at *3 (E.D. Pa. Aug. 24, 2010); *see also Holley v. Erickson Living*, No. Civ. 11-2444, 2012 WL 1835738, at *3 (E.D. Pa. May 21, 2012) ("[T]he right to proceed collectively may be foreclosed where an action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice.") (quoting *Bramble*, 2011 WL 1389510, at *4); *Symczyk*, 656 F.3d at 193 (requiring a "factual nexus between the manner in which the employer's alleged policy affected [the plaintiff] and the manner in which it affected other employees"); *Prise v. Alderwoods Grp., Inc.*, 817 F. Supp. 2d 651, 670 (W.D. Pa. 2011) (stating that members of a putative class must show that they "were together the victims of a single decision, policy or plan"). Thus, while Plaintiff continuously emphasizes the "lenient" standard in her moving papers, conditional certification is not granted automatically, and it is still her burden to show that the members of the putative collective are "similarly situated." She patently fails to do this.

<u>**ARGUMENT**</u>

**I.**    **PLAINTIFF CANNOT MEET HER "LENIENT" BURDEN OF PROOF FOR CONDITIONAL CERTIFICATION**

Plaintiff cannot meet her burden of proof at the conditional certification stage—no matter how "leniently" that standard may be applied—because her own pleadings make clear that there was no common, unlawful policy that injured all Start-Up Specialists as a group. Indeed, it would be impossible for her to so allege, since Plaintiff herself states that some Start-Up Specialists are classified as non-exempt while others, including herself, are improperly classified as exempt (Dkt. No. 1, Compl. ¶ 25) and presumably still others, based on their job descriptions, were properly classified as exempt. Accordingly, there can be no uniform unlawful misclassification policy applicable to all Start-Up Specialists since Plaintiff alleges that Start-Up Specialists are not classified, or perform job duties, in a manner that is uniform within the proposed collective.

Even if Plaintiff modified the collective to include only exempt Start-Up Specialists, Plaintiff's Motion would still fail as a matter of law. This Court has repeatedly held that the mere classification of a group of employees as exempt under the FLSA—even a large or nationwide group—is insufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative collective members similarly situated for § 216(b) purposes. *Bramble v. Wal-Mart Stores, Inc*., 2011 WL 1389510, at *4 (E.D. Pa. Apr. 12, 2011); *see also Schneck v. Lawrence D. Brudy & Associates, Inc.*, No. CA 15-1058, 2016 WL 912299, at *6 (W.D. Pa. Mar. 10, 2016). Rather, Plaintiff must set forth some evidence that the alleged members of the purported collective were subject to the same policies requiring them to perform primarily non-exempt tasks. *Bramble*, 2011 WL 1389510, at *4. In that regard, Plaintiff's threadbare declaration and pleadings, including the Nickerson declaration, can be searched in vain for any

allegation of the *policy* that allegedly injured the entire group. As such, the Motion's showing is patently insufficient to meet even the "modest factual showing" that Plaintiff and other Start-Up Specialists were subject to the same unlawful employer policy that required all employees who were classified as exempt to perform non-exempt tasks, and conditional certification is inappropriate.

### A.      Plaintiff and Other Start-Up Specialists Are Not Collectively Victims of a Uniform Misclassification Policy

It is axiomatic that a group of employees who are classified differently cannot be victims of a uniform misclassification policy. For this reason, Plaintiff cannot meet the threshold requirement for conditional certification.

The *sine qua non* of conditional certification is evidence that members of a collective are subjected to some common employer policy that injured the *entire* class under the FLSA. *Zavala*, 691 F.3d at 538. Plaintiff fails to establish that she and other Start-Up Specialists are "similarly situated." In fact, Plaintiff admits that there are Start-Up Specialists in the purported collective who are situated differently from her. Specifically, Plaintiff alleges that some Start-Up Specialists are classified as exempt while others are classified as non-exempt. (Dkt. No. 1, Compl. ¶ 25). Accordingly, Plaintiff cannot establish the existence of a uniform unlawful policy that applies to *all* Start-Up Specialists, where, as here, all Start-Up Specialists are not uniformly classified and not all Start-Up Specialists perform the same duties.

Under nearly identical circumstances, the court in *Craig v. Rite Aid Corp.*, No. 08-CV-2317, 2009 WL 4723286, at *4 (M.D. Pa. Dec. 9, 2009) held that the plaintiff "failed to meet [the] light burden with respect to the class of *all* assistant managers" where some assistant managers were classified as exempt, and others were classified as non-exempt. As in *Craig*, the Court here cannot, as a matter of law and logic, grant conditional certification for the alleged

10

misclassification of a nationwide collective for all Start-Up Specialists where the alleged nationwide collective is not uniformly classified.

### B.     An Administrative Directive by a Manager Enforcing an Exemption Classification Is Not In and of Itself a Common Unlawful "Policy"

Plaintiff's papers admit on their face that there is no uniform "policy" of misclassification, but rather that specific classification decisions are made on an individual-by-individual basis. (Dkt. No. 1, Compl. ¶ 25).   The absence of any uniform "policy" of misclassification means that when a manager tells a Start-Up Specialist who happens to be classified (or misclassified) as exempt not to record more than eight hours a day for administrative purposes, what is being communicated is not a "policy"—it is an administrative instruction based on a classification decision that was made specific to that individual.

Though Plaintiff would pretend otherwise, this statement—which is merely a reflection of a decision to classify some individual employees in a certain way—is simply not the same thing as the kind of common policy, plan, or practice that renders all putative class members similarly situated for § 216(b) purposes. *Bramble*, 2011 WL 1389510, at *4. As a result, statements *implementing* the classification decision similarly cannot suffice. *Id.* at *6 (denying conditional certification due to the "limited evidence" set forth by the plaintiff to show, "Plaintiff[s'] job duties [were] [not] merely anecdotal evidence specific to them [and] can be more broadly applied."); *see Mike v. Safeco Ins. Co. of America*, 274 F. Supp. 2d 216 (D. Conn. 2003) (denying conditional certification where plaintiff "spent the balance of his time performing non-administrative functions despite the fact that his job description call[ed] for him to perform some administrative functions," and was therefore challenging his individual treatment as opposed to defendant's overarching classification policy). Accordingly, these "statements" alone are not evidence of a common unlawful policy.

C.   **Even Assuming *Arguendo* Plaintiff Modified the Collective Definition to Include Only Exempt Start-Up Specialists, Plaintiff Cannot Show She and Other Exempt Start-Up Specialists Are Similarly Situated**

Perhaps aware of the lack of substance to support her Motion, Plaintiff repeatedly reminds this Court that her burden at conditional certification is "lenient" or "modest." (Pl.'s Br. at 3-4). But a "modest" showing still must show something; it cannot rely, as the Motion does, on pure conjecture.

i.   **Plaintiff's Conclusory and Threadbare Evidence Is Patently Insufficient to Establish She and Other Start-Up Specialists Are "Similarly Situated"**

Courts in this jurisdiction consistently hold that common classification status alone is insufficient to show classified workers are similarly situated and subject to a uniform policy for purposes of conditional certification. *Bramble*, 2011 WL 1389510, at *4 ("[T]he mere classification of a group of employees—even a large or nationwide group—as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes."); *Moore*, 2013 WL 2338251, at *5 ("[C]ourts have readily exercised discretion and denied conditional certification motions when plaintiffs have relied on a common exemption status as the factor that binds a putative class together."). Nor does Defendants' job description, on its face, establish that Start-Up Specialists were required to perform non-exempt duties. (Dkt. No. 1, Compl. Ex. A). In fact, Plaintiff expressly admits this in her Complaint by alleging "[i]rrespective of Plaintiff's written job description, at all times relevant herein, Plaintiff's primary duties generally included assisting Project Manager(s) with submitting packages to various ethics committees and regulatory authorities." (Dkt. No. 1, Compl. ¶ 16).

Since Plaintiff cannot rely upon common exemption status alone, and the job description on its face is not unlawful, she must describe real *evidence* that Start-Up Specialists *as a group*

were required to perform non-exempt tasks. As explained by this Court in *Bramble*, the evidence offered by the plaintiffs in that case is akin to the evidence offered by Plaintiff here, which is patently insufficient.

In *Bramble*, the plaintiffs failed to point to a job description that said all Asset Protection Coordinators ("APCs") were required to perform non-exempt tasks for a majority of their working hours, and therefore, this Court looked at evidence of job duties performed by members of the proposed collective to determine if they were "similarly situated." *Id.* at *5. The plaintiffs provided individualized accounts of their job duties and thus did not provide enough evidence to show, "Plaintiff[s'] job duties [were] [not] merely anecdotal evidence specific to them [and] can be more broadly applied." *Id.* at *6. Accordingly, this Court denied the plaintiffs' motion for conditional certification.

Similarly, in *Moore*, the court denied conditional certification where "[t]he only evidence that other similarly situated individuals [existed was] the addition of a single other opt-in member—too thin a reed on which to rest a nationwide certification." 2013 WL 2338251, at *5. The court first began with the premise that the existing company-wide classification policy exempting all Assistant Branch Managers without more was insufficient.  *Id.* at *6. The court then reviewed the evidence in comparison with other cases where the plaintiffs had submitted more than 15 declarations in support or submitted letters, depositions, internal complaints, and hours and budgets from stores nationwide in support of a single policy. *Id.* The Court held that where, as here, there is evidence of one other putative opt-in member, that evidence is insufficient to establish conditional certification. *Id.*

Here, the only way Plaintiff can show that she and other Start-Up Specialists are similarly situated on a *nationwide* basis is by providing enough evidence to demonstrate Start-Up

Specialists nationwide were subject to the same policies requiring them to perform non-exempt tasks. *See Bramble*, 2011 WL 1389510, at *5. Plaintiff fails to do so here with the paltry and conclusory evidence she has offered.

First, the job description in itself could never be evidence that Start-Up Specialists were similarly situated, since it does not support a contention that Start-Up Specialists performed primarily non-exempt tasks. Quite to the contrary, the description contemplates *exempt* duties. Chief among these duties, Plaintiff was required to "[a]ct as the *lead* contact with investigative sites during assigned start-up activities," "[c]ollect, review, *approve* process and track regulatory & investigator documents required for study site activation," and "[m]onitor start up activities to *ensure issues are identified*, and *managed*, and, if necessary, escalated to the appropriate individual." (Dkt. No. 1, Compl. Ex. A) (emphases added). Such tasks require the "exercise of discretion and independent judgment." 29 C.F.R. § 541.202. Plaintiff admits as much in her Complaint, alleging that "[i]rrespective of Plaintiff's written job description, at all times relevant herein, Plaintiff's primary duties generally included assisting Project Manager(s) with submitting packages to various ethics committees and regulatory authorities." (Dkt. No. 1, Compl. ¶ 16).

Just as in *Bramble*, without the benefit of a job description which describes primarily non-exempt tasks, the only way Plaintiff can provide enough evidence for conditional certification is to show that despite being classified as exempt, and despite a job description showing exempt duties, Start-Up Specialists nationwide nevertheless performed primarily non-exempt tasks, notwithstanding their job descriptions. *See Bramble*, 2011 WL 1389510, at *4. But the barebones declarations offered by Plaintiff fall far short of making the necessary showing.

In her own declaration, Plaintiff merely states that some Start-Up Specialists performed the same tasks as her and lists the names of nine other individuals without giving any indication

where they worked, and most importantly, which specific non-exempt tasks they *all* similarly performed. (Pl.'s Decl. ¶¶ 7-8). In fact, Plaintiff's declaration does not cite to *any* non-exempt tasks that she and other Start-Up Specialists allegedly performed together. (*See* Pl.'s Decl. (*passim*)).

The declaration of Tamera Nickerson does nothing to help. Nickerson's declaration only describes a handful of job duties that she alleges were non-exempt tasks, including collecting regulatory documents from clinical sites, reviewing regulatory documents, and forwarding regulatory documents to the appropriate party after her review of same is complete. (Nickerson Decl. ¶ 5). Even assuming these alleged tasks are non-exempt, however, her declaration stops there: critically, she offers nothing more than the conclusory statement that other Start-Up Specialists had the same primary job duties as her. (*Id.* ¶ 10). The logical leap that Plaintiff thus asks this Court to make—namely, that the vague, conclusory, *ad hoc* contentions in her and Nickerson's declarations should be extrapolated to conditionally certify an entire nationwide collective—constitutes the kind of speculation that is wholly insufficient to support that Start-Up Specialists nationwide performed non-exempt tasks. *See Freeman v. Sam's E. Inc.*, No. CV 2:17-1786 (WJM), 2018 WL 5839857, at *3 (D.N.J. Nov. 8, 2018) (denying conditional certification where plaintiff's claims "rest[ed] on his own individualized work experience" and "failed to present any evidence that other [assistant managers] had similar experiences"; such evidence "essentially ask[ed] the Court to assume that because he performed non-managerial tasks and worked in excess of forty hours in a workweek, then other [assistant managers] did too."); *Dunkel v. Warrior Energy Servs., Inc.*, 304 F.R.D. 193, 203 (W.D. Pa. 2014) (rejecting declarations from plaintiffs as to work conditions at locations where they did not personally work

15

on the basis that "[t]hese attempts fail because the Plaintiffs have offered little more than a combination of hearsay, guesswork, and enthusiastic hopefulness to support their assertions").

Again, here, Plaintiff merely offers two declarations, one from Plaintiff, and another from an employee who allegedly began (but apparently did not continue) her employment for some "defendant" at the same location as Plaintiff—a far cry from enough evidence to establish a nationwide class. Further, neither of the two declarations demonstrate that there are potentially similarly situated Start-Up Specialists who performed non-exempt tasks. Plaintiff's declaration fails to so much as mention which non-exempt duties she performed. The declaration of Nickerson likewise only lists a few examples of alleged non-exempt duties that she performed, but fails to offer any other evidence that she, or any other Start-Up Specialist working at her location (nationwide or otherwise) performed non-exempt tasks. Plaintiff therefore fails to meet the "modest factual showing" necessary for conditional certification.

### ii.     The Cases Cited In Plaintiff's Moving Papers Are Inapposite

Plaintiff's cited cases do not change the analysis. The cases Plaintiff primarily relies on, *Viscomi v. Diner*, No. CV 13-4720, 2016 WL 1255713 (E.D. Pa. Mar. 31, 2016) and *Purnamasidi v. Ichiban Japanese Rest.*, No. 10-CV-1549 DMC JAD, 2010 WL 3825707 (D.N.J. Sept. 24, 2010), are inapposite. Both cases were limited to claims predicated only on overtime violations; however, neither case involved the classification issues present here in this case.

In those cases, the court granted conditional certification where plaintiffs submitted threadbare affidavits because such affidavits were at least based on the affiants' "personal observation" and "experience, including discussions with many other wait staff." *See Viscomi*, 2016 WL 1255713, at *4; *Purnamasidi*, 2010 WL 3825707, at *4. The same logic does not apply here.

Plaintiff argues that she has proffered enough evidence for conditional certification because in her declaration, she states, "based on numerous direct communications [she] had with other Startup Specialists," that other Start-Up Specialists performed the same primary job duties and would also work greater than forty hours per work without being paid, and were told not to report all hours.  (Pl.'s Decl. ¶ 7).  However, this is not enough to establish Start-Up Specialists nationwide were similarly situated in the classification context.

Unlike *Viscomi* and *Purnamasidi*, this blanket statement does not show potential opt-in plaintiffs are similarly situated because in this type of case, where Plaintiff has claimed Start-Up Specialists nationwide are misclassified, the only way to determine if other Start-Up Specialists were subject to the same policies requiring them to perform non-exempt tasks is to look at specific evidence of the non-exempt tasks actually performed by them.  *Bramble*, 2011 WL 1389510, at *6 (E.D. Pa. Apr. 12, 2011) (denying conditional certification in part because "consideration of the propriety of an employer's application of an exemption to its employees would require an individualized or fact intensive analysis.").  Plaintiff's threadbare declaration, and the declaration of Nickerson, are not based upon personal observation of other Start-Up Specialists' job duties.  While Plaintiff's declaration has no description of alleged non-exempt job duties, Nickerson's declaration merely describes her own individual experience. Her conclusory statement that other Start-Up Specialists performed the same job duties as her, without more, is insufficient and cannot carry Plaintiff's burden of proof, even at this "lenient" stage.

### D.     The Court Should Reject Plaintiff's Proposed Notice

For the reasons provided above, the Court should not issue opt-in notices. However, should the Court determine that notice should be issued, Plaintiff's proposed notice should not be issued due to its profound deficiencies.  (*See* Dkt. No. 16-1).  First, Plaintiff fails to identify the

manner in which the notice will be sent to alleged potential opt-in plaintiffs. *See Steinberg v. TD Bank, N.A.*, No. 10-cv-5600, 2012 WL 2500331, at *10 (D.N.J. June 27, 2012). Second, the notice is riddled with typos, rendering its wording incomplete, unintelligible and ambiguous. Third, the notice improperly states the lawsuit is proceeding as a class action and that the causes of action concern state law claims. These statements are incorrect, misleading and are wholly inapplicable to this lawsuit. Based on the foregoing, Plaintiff's proposed notice should be rejected in its entirety. To the extent the Court is inclined to issue some form of notice, Defendants respectfully submit that the parties should first be required to meet and confer as to the proper wording of any such notice, as well as the means of delivery.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion for Conditional Certification with prejudice.

Respectfully submitted,

Dated: November 14, 2019                    By:   */s/ Katharine V. Hartman*
                                                  Katharine V. Hartman
                                                  Attorney I.D. No.:  203697
                                                  Gregory F. Cirillo
                                                  Attorney I.D. No.:  46878
                                                  Danielle Goebel
                                                  Attorney I.D. No.:  313622
                                                  DILWORTH PAXSON LLP
                                                  1500 Market Street, Suite 3500E
                                                  Philadelphia, PA 19102
                                                  Tel: (215) 575-7122
                                                  Fax: (215) 575-7200
                                                  Email: gcirillo@dilworthlaw.com
                                                  Email: khartman@dilworthlaw.com
                                                  Email: dgoebel@dilworthlaw.com

                                                  Mark A. Konkel (*admitted pro hac vice*)
                                                  Robert I. Steiner (*admitted pro hac vice*)
                                                  Diana Hamar (*admitted pro hac vice*)
                                                  KELLEY DRYE & WARREN LLP

18

New York, NY 10178
Tel: (212) 808-7908
Fax: (212) 808-7897
Email: mkonkel@kelleydrye.com
Email: rsteiner@kelleydrye.com
Email: dhamar@kelleydrye.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, I caused to be served a true and correct copy of the foregoing Memorandum Of Law In Opposition To Plaintiff's Motion For Conditional Certification electronically via the CM/ECF System  and electronic mail upon all counsel of record listed below:

Jonathan Chase, Esquire
**Ruppert Manes Narahari**
1628 John F. Kennedy Boulevard. Suite 1650
Philadelphia, PA 19103
Telephone: 215-475-3504
Email: jwc@ jwc@lawkm.com
*Attorneys for Plaintiff, Larhonda Mitchell*

*/s/  Katharine V. Hartman*
Katharine V. Hartman

Dated: November 14, 2019