```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA


LARHONDA MITCHELL, individually   :   CIVIL ACTION
and on behalf of all others       :   NO. 19-02877
similarly situated,               :
                                  :
          Plaintiff,              :
                                  :
     v.                           :
                                  :
COVANCE, INC. and CHILTERN,       :
INTERNATIONAL, INC.,              :
                                  :
          Defendants.             :
```

M E M O R A N D U M

Eduardo C. Robreno, J.                        February 3, 2020


**I.   INTRODUCTION**

Plaintiff Larhonda Mitchell brings this action against Covance, Inc., and Chiltern International, Inc., (collectively, "Covance").[1] Mitchell, on behalf of herself and those similarly situated, alleges that Covance violated the Fair Labor Standards Act ("FLSA") by misclassifying some "Startup Specialists" employees as exempt, failing to pay them overtime, and instructing them to not report overtime hours worked. To that end, Mitchell proposes the conditional certification of "All Startup Specialists who have been employed by [Covance] [and

---

[1] The two entities merged and Covance, Inc., is the surviving entity.

1

classified as exempt[2]] at any time since three (3) years prior to the filing of this Complaint until the date of final judgment in this matter." ECF No. 1 ¶ 30.

Currently before the Court is Mitchell's motion to conditionally certify a collective action. ECF No. 16. For the reasons that follow, the Court will deny Mitchell's motion.

## II.   BACKGROUND

Covance is a global drug development company and contract research organization that employs thousands of employees worldwide.

From November 2016 through June 2019, Mitchell was employed by Covance as a "Startup Specialist" and assigned to its King of Prussia, Pennsylvania, branch. Covance classifies some Startup Specialists, including Mitchell, as exempt from the overtime requirements of the FLSA pursuant to 29 U.S.C. § 213. Mitchell claims that she and the other Startup Specialists whom Covance classified as exempt were misclassified because they primarily performed nonexempt tasks. Therefore, Mitchell claims, she and those Startup Specialists were improperly denied overtime pay. Mitchell also claims that Covance, to avoid paying overtime

---

[2] In her reply to Covance's opposition of her motion, Mitchell agreed to limit the scope of the proposed collective for which she seeks conditional certification to just those Startup Specialists Covance classified as exempt. ECF No. 20.

2

wages owed, instructed the misclassified Startup Specialists to not report overtime hours worked.

Although Startup Specialists are assigned to particular offices throughout the country, they primarily work remotely from their homes or at clients' sites.

Mitchell filed this suit to recover unpaid overtime compensation.[3] She alleges Covance misclassified her and some of its other Startup Specialists as exempt. Mitchell then moved for conditional certification of her collective action. ECF No. 16. Therein, Mitchell moved the Court to (1) order Covance to produce the names, last known physical and email addresses, and last known telephone numbers for each individual who worked for Covance as a Startup Specialist during the three-year period immediately preceding the filing of her Complaint; and (2) to order opt-in notice of the collective action to all these individuals. See ECF No. 16-3. Covance opposed the motion, ECF No. 19, and Mitchell thereafter filed a reply. ECF No. 20. The Court held oral argument and the motion is now ripe for disposition.

In support of her motion, Mitchell provided the following: (1) A "Startup Specialist III" job description, ECF No. 1 at 15-

---

[3] Mitchell also seeks compensation for alleged retaliation; however, those claims are brought only on an individual basis and are not relevant to the conditional certification motion before the Court.

3

17; (2) Mitchell's own declaration, ECF No. 16-1 at 3-5; and (3) Tamera Nickerson's declaration, ECF No. 16-1 at 6-8.

### III. APPLICABLE LAW

The FLSA, in pertinent part, requires employers to pay nonexempt employees overtime wages for hours worked over forty hours a week "at a rate not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a); see 29 U.S.C. § 213 (specifying exemptions). A plaintiff seeking redress under the FLSA may maintain an action on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). This collective action device benefits "[t]he judicial system by providing a mechanism for efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989). "Unlike a typical class action under Federal Rule of Civil Procedure 23 where plaintiffs must opt-out of the lawsuit, a collective action under the FLSA requires similarly situated plaintiffs to opt-in to the lawsuit." Holley v. Erickson Living, No. 11-02444, 2012 WL 1835738, at *2 (E.D. Pa. May 21, 2012) (citing Hoffmann-La Roche, 493 U.S. at 170).

To manage this opt-in requirement, "district courts have discretion, in appropriate cases, to implement [the collective

action provision] by facilitating notice to potential plaintiffs." Hoffmann-La Roche, 493 U.S. at 169. Hoffmann-La Roche teaches that district courts should manage the litigation and curb overly burdensome lawsuits by exercising their discretion when deciding if notice is appropriate. See id. at 172 ("Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action.").[4] Although the notice may provide potential plaintiffs the ability to fulfill the statutorily required opt-in procedure, it "is neither necessary nor sufficient for the existence of a representative action under FLSA." Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010); see Symczyk v. Genesis Healthcare Corp., 656 F.3d 189, 194 (3d Cir. 2011), rev'd on other grounds sub nom., Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66 (2013) (citing Myers, 624 F.3d at 555 n.10). Rather, "[t]he key inquiry is whether the proposed opt-in plaintiffs are

---

[4] In additional to consideration of administrative burden on the court system due to duplicative suits, excessive burden on a defendant may also be an appropriate consideration in the notice-sending process. The Third Circuit, in establishing the level of proof a plaintiff must produce for a court to approve sending notice of an FLSA collective action, adopted the reasoning of Smith v. Sovereign Bancorp, Inc., No. 03-2420, 2003 WL 22701017 (E.D. Pa. Nov. 13, 2003). Symczyk, 656 F.3d at 193 (citing Smith, 2003 WL 22701017, at *3); Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 536 (3d Cir. 2012) (same). The Smith court reasoned that court oversight of the notice process prevents not only against "an inefficient and overbroad application of the opt-in system" but also against "plac[ing] a substantial and expensive burden on a defendant to provide names and addresses of thousands of employees who would clearly be established as outside the class if the plaintiff were to conduct even minimal class-related discovery." Smith, 2003 WL 22701017, at *2.

5

similarly situated so the case may proceed as a collective action." Holley, 2012 WL 1835738, at *3.

In deciding whether a suit brought under § 216(b) may continue as a collective action, courts in the Third Circuit employ a two-step analysis. See Symczyk, 656 F.3d at 192 (noting the two-step approach); Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 536 (3d Cir. 2012) (same). "During the initial phase, the court makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff." Symczyk, 656 F.3d at 192. If so, "the court will 'conditionally certify' the collective action for the purposes of notice and pretrial discovery." Id. During the second step, known as "final certification," the named plaintiff must prove by a preponderance of the evidence that the opt-in plaintiffs are similarly situated to her and the court employs an "ad-hoc approach, which considers all the relevant factors [to] make[] a factual determination on a case-by-case basis." Zavala, 691 F.3d at 536-37 (3d Cir. 2012) ("Relevant factors [to the ad-hoc analysis] include (but are not limited to): whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and

whether they have similar salaries and circumstances of employment.").

Only step one is implicated by the present motion.

At step one, a plaintiff meets her burden if she makes a "'modest factual showing' that the proposed recipients of opt-in notices are similarly situated." Symczyk, 656 F.3d at 192-93. To make a modest factual showing, a plaintiff "must produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affects other employees." Id. at 193.

Although the modest factual showing is a lenient standard, it does not compel automatic certification at the notice stage. See Viscomi v. Diner, No. 13-4720, 2016 WL 1255713, at *3 (E.D. Pa. Mar. 31, 2016) (quoting Parker v. NutriSystem, Inc., No. 08-1508, 2008 WL 43999023, at *2 (E.D. Pa. Sept. 26, 2008)). As the Third Circuit explained, by requiring evidence of a factual nexus between the manner in which an employer's alleged policy affected a named plaintiff and the manner in which it affected other employees, the standard "works in harmony with the opt-in requirement to cabin the potentially massive size of collective actions" and "best comports with congressional intent and with the Supreme Court's directive that a court 'ascertain[] the contours of [a collective action] at the outset.'" Symczyk, 656

7

F.3d at 193 (alterations in original) (citing Hoffmann-La Roche, 493 U.S. at 172).

This process, of requiring at a minimum a modest showing that the plaintiff is similarly situated to other putative members of the collective, places the District Court in the role of gatekeeper. One, it allows the Court to screen at this early stage overly burdensome litigation. Symczyk, 656 F.3d at 192-93. Two, it ensures that the notice to be sent out to the putative collective members contains accurate information and is not a naked solicitation of claims. See Hoffmann-La Roche, 493 U.S. at 172, 174.

**IV. DISCUSSION**

As noted above, Mitchell moves to conditionally certify an FLSA collective of "[a]ll Startup Specialists who have been employed by [Covance] [and classified as exempt] at any time since three (3) years prior to the filing of this Complaint until the date of final judgment in this matter." ECF No. 1 ¶ 30.

The Court must now decide whether Mitchell has made a modest factual showing that she and other classified-as-exempt Startup Specialists, the potential members of the collective action Mitchell seeks to assert, are similarly situated.

8

Mitchell offers three pieces of evidence in support of her claim that there are other Startup Specialists who are similarly situated to her. The Court will review each item seriatim.

First, she provides a "Startup Specialist III" job description. Mitchell describes the job description as "[a] true and accurate copy of the job description that was applicable to [Mitchell] at the time she was hired." ECF No. 1 ¶ 14. This job description fails to allege, much less show, that any other Covance employee was subject to the job description beyond Mitchell.

Second, Mitchell provides in her declaration that she was not paid overtime wages, that she was told not to report overtime hours, that she asked some other Startup Specialists if they also were not paid overtime wages, and that those other Startup Specialists told her they did not receive overtime wages. Although the declaration names several individuals, aside from Nickerson, Mitchell provides no indication of what locations these individuals worked at, nor any indication of whether they were paid on a salaried or hourly basis. Mitchell's conclusory statements, totally lacking in detail, that the assertions "are based on numerous direct communications [she] had with other Startup Specialists" does not provide evidence that Mitchell has any personal knowledge that these individuals

9

were subject to unfair payment of wages. Further, because the declaration does not explain who, if any, of the listed individuals were payed on a salaried basis, the Court is unable to determine if the individuals would even fit Mitchell's proposed collective as amended.

Third, Ms. Tamera Nickerson's declaration provides no help in clarifying whether other Startup Specialists are similarly situated to Mitchell. The declaration is filled primarily with the same formulaic assertions from Mitchell's declaration. And while Nickerson's declaration states that she was "assigned" to work at two locations—a King of Prussia, Pennsylvania, location and a second location somewhere in North Carolina—the declaration does not state at which location, or locations, Ms. Nickerson worked as a Startup Specialist. ECF No. 16-1. Nor does it identify which location Ms. Nickerson was assigned to when she allegedly was told not to report overtime hours. Id.

Considering all of the evidence produced by Mitchell, she fails to make a modest factual showing to support a potentially nationwide collective action.

**V.   CONCLUSION**

For the reasons stated above, the Court will deny without prejudice Mitchell's motion for conditional certification.[5]

---

[5] The Court notes that at oral argument, the Court asked counsel for Mitchell what case provided the strongest support for Mitchell's motion for conditional certification. Counsel offered that Purnamasidi v. Ichiban Japanese Rest., No. 10-cv-1549, 2010 WL 3825707 (D.N.J. Sept. 24, 2010), most strongly supported Mitchell's position. However, the Court finds Purnamasidi to be easily distinguishable from the present case.

First, Purnamasidi predates the Symczyk decision, where the Third Circuit settled an inter-circuit split by adopting the "modest factual showing" standard for conditional certification as opposed to the more lenient "substantial allegation" standard. Symczyk, 656 F.3d at 193, 193 n.5. The Purnamasidi court, while noting the use of both standards within the District of New Jersey at that time, did not expressly adopt either. 2010 WL 3825707, at *3-*4. Instead, applying a "minimal factual showing" standard, the court conditionally certified the class by finding the plaintiff had "cleared the threshold, if only by the smallest margin." Id. at *4.

Second, Purnamasidi is factually distinguishable from this case. Purnamasidi dealt with minimum wage and overtime violations alleged on behalf of a potential collective of 25 employees of a single restaurant. Id. The Purnamasidi court granted conditional certification upon submission of the plaintiff's declaration and the declaration of a second waiter who stated, "I regularly see other employees, such as waiters, waitresses, and bussers working the same hours and receiving the same type of pay as I do." Id. at *4. Here, Mitchell alleges overtime violations, by way of misclassification occurring at multiple locations, on behalf of Startup Specialists who primarily worked remotely. Mitchell made no allegations to the Court regarding the potential class size nor is it readily inferable from either declaration how Mitchell or Nickerson know of similarly situated Startup Specialists—there is no allegation that they ever worked with these other Startup Specialists or that either Mitchell or Nickerson observed any of the alleged violations at other branches. These types of declarations may be acceptable in a situation such as Purnamasidi, where the employees all work together in a single location. However, in this case, with a potential collective of employees who primarily work remotely, two declarations that base conclusions regarding the existence of other similarly situated employees upon no more than "numerous direct communications," cannot not provide a modest factual showing adequate to support conditional certification. See Siguenza v. Bayview Asset Mgmt., LLC, No. 14-05336, 2015 WL 3818739, at *3 (E.D. Pa. June 17, 2018) (denying conditional certification as to office branches where facts in support of conditional certification as to those branches "may constitute inadmissible hearsay which should not form the basis of a claim for employees who may not be similar at all").